IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-55

 No. 232A20

 Filed 23 April 2021

 IN THE MATTER OF: T.M.L. and A.R.L.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 7

 February 2020 by Judge Larry Leake in District Court, Mitchell County.1 This matter

 was calendared for argument in the Supreme Court on 19 March 2021 but determined

 on the record and briefs without oral argument pursuant to Rule 30(f) of the North

 Carolina Rules of Appellate Procedure.

 Hockaday & Hockaday, P.A., by Daniel M. Hockaday, for petitioner-appellee
 Mitchell County Department of Social Services.

 Michelle FormyDuval Lynch for appellee Guardian ad Litem.

 Wendy C. Sotolongo, Parent Defender, by Annick Lenoir-Peek, Deputy Parent
 Defender, for respondent-appellant father.

 BERGER, Justice.

¶1 Respondent-father appeals from orders terminating his parental rights in the

 minor children “Troy” and “Ava.”2 The children’s mother died during the course of the

 underlying juvenile proceedings and is not a party to this appeal. Based on our review

 1 Although the termination orders indicate they were filed in Yancey County, the
 entirety of the record otherwise confirms Mitchell County to be their county of origin.
 2 We use pseudonyms to protect the juveniles’ privacy.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 of the record and respondent-father’s arguments, we hold the trial court properly

 considered respondent-father’s progress up to the time of the termination hearing

 before concluding that he willfully failed to make reasonable progress to correct the

 conditions that led to the children’s removal from the home. See N.C.G.S. § 7B-

 1111(a)(2) (2019). We further hold the trial court did not err by failing to consider

 whether poverty was the “sole reason” for respondent-father’s failure to correct the

 conditions which led to removal. See id. Accordingly, we affirm the trial court’s orders.

 I. Facts and Procedural History

¶2 Petitioner Mitchell County Department of Social Services (DSS) obtained

 nonsecure custody of the children on September 14, 2017, and filed juvenile petitions

 alleging that the children were neglected and dependent juveniles. The trial court

 adjudicated the children to be neglected and dependent juveniles on January 11,

 2018. The trial court found that the mother and respondent-father had a history of

 substance abuse and domestic violence which had previously resulted in the children

 being removed from the home and placed in DSS custody. At the time the petitions

 were filed, the mother had removed the children from their DSS-approved safety

 placement with their maternal grandmother. When DSS later found the mother with

 the children at a medical clinic, she was in a disoriented condition and had multiple

 syringes and empty pill bottles in her possession.

¶3 In its initial adjudication and disposition order entered on January 11, 2018,
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 the trial court ordered respondent-father to develop a case plan with DSS and delayed

 any visitation by respondent-father with the children “pending the signing of his DSS

 case plan and random clean drug screens.” Respondent-father did not sign his DSS

 case plan until July 18, 2018. The case plan required him to address issues of

 substance abuse, domestic violence, parenting skills, and housing and employment

 stability.

¶4 On November 20, 2019, DSS filed petitions to terminate respondent-father’s

 parental rights in Troy and Ava on the ground that he had willfully left them in an

 out-of-home placement for a period of at least twelve months without making

 reasonable progress to correct the conditions which led to their removal on September

 14, 2017. See N.C.G.S. § 7B-1111(a)(2). Respondent-father failed to file an answer to

 the TPR petitions within the period prescribed by N.C.G.S. § 7B-1107 (2019). The

 trial court held a hearing on the petitions on January 3, 2020, and entered orders

 terminating respondent-father’s parental rights in the children on February 7, 2020.

 Respondent-father gave timely notice of appeal to this Court pursuant to N.C.G.S. §

 7B-1001(a1)(1) (2019).

 II. Adjudication Under N.C.G.S. § 7B-1111(a)(2)

¶5 Respondent-father now claims the trial court erred in adjudicating grounds for

 the termination of his parental rights for his willful failure to make reasonable

 progress under N.C.G.S. § 7B-1111(a)(2). As a general matter, we review a trial
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 court’s adjudication under N.C.G.S. § 7B-1109

 to determine whether the findings are supported by clear,
 cogent and convincing evidence and the findings support
 the conclusions of law, with the trial court’s conclusions of
 law being subject to de novo review on appeal. Findings of
 fact not challenged by respondent are deemed supported by
 competent evidence and are binding on appeal. Moreover,
 we review only those findings necessary to support the trial
 court’s determination that grounds existed to terminate
 respondent’s parental rights.

 In re M.A., 374 N.C. 865, 869, 844 S.E.2d 916, 920 (2020) (cleaned up).

¶6 The statute at issue authorizes the trial court to terminate parental rights if

 the respondent-parent “has willfully left the juvenile in foster care or placement

 outside the home for more than 12 months without showing to the satisfaction of the

 court that reasonable progress under the circumstances has been made in correcting

 those conditions which led to the removal of the juvenile.” N.C.G.S. § 7B-1111(a)(2).

 It further provides that “[n]o parental rights, however, shall be terminated for the

 sole reason that the parents are unable to care for the juvenile on account of their

 poverty.” Id.

 A. Respondent-father’s progress as of the termination hearing date

¶7 Respondent-father first claims the trial court erred by “fail[ing] to consider

 evidence of [his] progress through the date of [the] hearing” in determining whether

 he had made reasonable progress in correcting the conditions which led to the

 children’s removal from the home. “While the trial court was correct in making
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 findings of fact about [his] lack of progress in the year prior to the filing of the petition

 to terminate parental rights,” respondent-father contends the trial court “cannot

 discount the progress he made from August 2019 through the date of the hearing” on

 January 3, 2020.

¶8 “[A]n adjudication under N.C.G.S. § 7B-1111(a)(2) requires that a child be left

 in foster care or placement outside the home pursuant to a court order for more than

 a year at the time the petition to terminate parental rights is filed.” In re J.S., 374

 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (cleaned up). However, the reasonableness of

 the parent’s progress “is evaluated for the duration leading up to the hearing on the

 motion or petition to terminate parental rights.” Id. (quoting In re A.C.F., 176 N.C.

 App. 520, 528, 626 S.E.2d 729, 735 (2006)).

¶9 The trial court’s findings of fact3 refute respondent-father’s assertion that the

 court failed to consider his progress up to the date of the termination hearing. Among

 the trial court’s findings in support of its adjudication under N.C.G.S. § 7B-1111(a)(2)

 are the following:

 [B]y the time the respondent father signed his DSS case
 plan in July, 2018 his housing was inadequate for the
 [children] and had no running water; the respondent father
 has made no progress in the [c]ourt’s judgment to remedy
 that problem; the respondent father testified he could now
 remedy the housing problem by either renting a home from
 $500–$600 per month or saving money for the purchase of

 3 The trial court’s orders are identical in all respects pertinent to respondent-father’s

 arguments on appeal.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 a $60,000 home; the [c]ourt finds that approach by the
 respondent father . . . does not provide any credible evidence
 to support he has any meaningful chance of securing
 suitable housing for the juvenile[s]; as for employment, the
 respondent father has testified he has worked “most of the
 time” while not in prison; however, the most recent
 employment he described began in November, 2019 at 35–
 40 hours per week is inconsistent with his other testimony
 in which he acknowledged “no, I had not been employed by
 someone all the time”; . . . the [c]ourt finds the respondent
 father has not obtained and maintained the necessary
 employment as required by the DSS case plan; . . . the
 respondent father testified he has participated in Triple P
 Parenting [classes] although he has provided no
 documentation regarding the same; . . . the respondent
 father has testified he has called approximately 50 times to
 DSS to express his concerns about the juvenile[s] and gain
 information regarding the case; the [c]ourt finds that
 testimony not credible; . . . that DSS workers have regularly
 and consistently reached out to the respondent father to let
 him know about the juvenile[s]; that the respondent
 father’s contact with . . . DSS . . . or efforts to comply with
 the DSS case plan has been essentially nonexistent; that the
 respondent father continues to reside in his residence in
 Cleveland County with his girlfriend; [and] the same still
 has no running water . . . .

 (Emphases added.) The suggestion that the trial court failed to consider respondent-

 father’s circumstances as of the termination hearing has no merit.

¶ 10 Respondent-father also accuses the trial court of “discrediting any progress

 [he] made . . . in the six months leading up to the termination hearing.” Although

 respondent-father makes no reference to the trial court’s actual discussion of the

 issue—whether in open court at the termination hearing or in its written order—our

 own review of the record confirms the trial court’s mistaken view of the time period
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 pertinent to an adjudication under N.C.G.S. § 7B-1111(a)(2).

¶ 11 After hearing the parties’ evidence and closing arguments, the trial court

 announced as follows:

 The [c]ourt finds and accepts that it is charged by law with
 evaluating whether the Respondent-Father has made
 reasonable effort to accomplish the plan goals and to
 eliminate those barriers or matters which led to the
 children being taken into the custody of [DSS] in that 12-
 month time period between November 21, 2018, and
 November 20 of 2019, the time of the filing of this action.
 The [c]ourt has heard evidence, events both before . . .
 November 21, 2018, and after November 20, 2019, and
 makes findings relative to those events, only as they might
 shed light on the events and significance of what occurred
 in the year preceding the filing of the termination petition
 by [DSS].

¶ 12 The trial court included similar language in its written orders as part of finding

 of fact 10:

 [I]n evaluating whether the respondent father has made
 reasonable efforts to accomplish the plan goals and to
 eliminate the reasons the juvenile[s] came into DSS
 custody, the [c]ourt has focused on the barriers that led to
 the [children] being placed in DSS custody and that 12
 month time period between 11/21/18 and 11/20/19 (when
 the TPR Petition[s] w[ere] filed); the [c]ourt has also heard
 evidence as to events, both before and after those dates,
 and made findings as to those events as may shed light on
 the events and significance [sic] in the year previous to the
 TPR Petition[s] being filed by Mitchell [County] DSS . . . .

 By focusing on respondent-father’s progress during the twelve-month period that

 preceded the filing of the TPR petitions, rather the entirety of his progress up to the
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 date of the termination hearing, the trial court applied an incorrect standard in

 adjudicating the existence of grounds for terminating respondent-father’s parental

 rights under N.C.G.S. § 7B-1111(a)(2). See In re J.S., 374 N.C. at 815, 845 S.E.2d at

 71 (requiring consideration of parent’s progress “up to the hearing on the motion or

 petition to terminate parental rights” (quoting In re A.C.F., 176 N.C. App. at 528, 626

 S.E.2d at 735)).

¶ 13 Our conclusion that the trial court erred does not end our inquiry. “An

 appellant must not only show error; he must show that the error was prejudicial.”

 Rudd v. Am. Fid. & Cas. Co., 202 N.C. 779, 782, 164 S.E. 345, 347 (1932). Moreover,

 this Court has long held that “a correct decision of the lower court will not be

 disturbed because the court gave a wrong or insufficient reason therefor.” Temple v.

 Temple, 246 N.C. 334, 336, 98 S.E.2d 314, 315 (1957).

¶ 14 The record shows the trial court mistakenly believed that N.C.G.S. § 7B-

 1111(a)(2) required it to assess respondent-father’s progress during the twelve-month

 period between November 2018 and November 2019. However, the trial court also

 made findings of fact that account for respondent-father’s progress up to the date of

 the termination hearing—albeit only in order to “shed light on the events and

 significance of what occurred in the year preceding the filing of the termination

 petition[s].” Regardless of the trial court’s purpose in making these findings, they are

 sufficient to permit a determination of the existence of grounds for terminating
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 respondent-father’s parental rights under N.C.G.S. § 7B-1111(a)(2) because they

 reflect the totality of respondent-father’s progress in correcting the conditions which

 led to the children’s removal from the home up to the date of the termination hearing.

 See In re J.S., 374 N.C. at 815, 845 S.E.2d at 71.

¶ 15 This Court reviews de novo the issue of whether a trial court’s adjudicatory

 findings of fact support its conclusion of law that grounds existed to terminate

 parental rights pursuant to N.C.G.S. § 7B-1111(a). In re M.A., 374 N.C. at 869, 844

 S.E.2d at 920. “Under a de novo review, the court considers the matter anew and

 freely substitutes its own judgment for that of the [trial court].” In re C.V.D.C., 374

 N.C. 525, 530, 843 S.E.2d 202, 205 (2020) (alteration in original) (quoting In re Appeal

 of Greens of Pine Glen Ltd. P’ship, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

¶ 16 Here, conclusion of law 3 states as follows:

 [R]espondent father has willfully left the [children] in
 foster care or placement outside the home for a period of
 more than 12 months without showing to the satisfaction
 of the [c]ourt that reasonable progress under the
 circumstances has been made in correcting those
 conditions which led to the removal of the [children] as
 prescribed by [N.C.G.S. §] 7B-1111(a)(2).

¶ 17 Reviewing this issue de novo, we hold the trial court’s findings of fact support

 a conclusion that respondent-father had willfully failed to make reasonable progress

 at the time of the termination hearing to correct the conditions which led to the

 children’s removal from the home.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

¶ 18 At the time of the January 3, 2020 hearing, respondent-father had been

 provided more than twenty-seven months to correct the conditions which led to the

 children’s removal from the home. In his brief, respondent-father provides the

 following description of his DSS case plan signed on July 18, 2018:

 The plan required him to take parenting classes due to his
 limited parenting experiences. Because of [his] prior
 substance use, he was expected to complete a CCA
 (Comprehensive Clinical Assessment) and follow
 recommendations, as well as comply with requests for drug
 screens from DSS. [He] was to obtain a steady job to
 support himself and the children as well as housing
 appropriate for himself and the children. He would address
 any domestic violence concerns and follow
 recommendations from the CCA and attend the Batterers
 Intervention Program (“BIP”).

¶ 19 As found by the trial court, respondent-father failed to comply with the

 domestic violence component of his case plan by completing BIP. Respondent-father

 acknowledged he was dismissed from BIP for nonattendance in late 2018. Although

 he purported to have signed up for the program a second time in mid-November 2019,

 he testified he had completed just one-third of the required classes and would need

 “[t]hree or four months” of additional regular attendance in order to complete the

 program.

¶ 20 Respondent-father argues that his failure to complete the BIP “matters only if

 he had not addressed the cause of the domestic violence concerns” arising from his

 history of domestic violence with the children’s mother, which included a 2017
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 conviction for assault on a female against her. This argument has no merit. The trial

 court was empowered to require respondent-father to obtain treatment for domestic

 violence as a condition of his case plan. See In re D.L.W., 368 N.C. 835, 845, 788 S.E.2d

 162, 168 (2016) (“Subdivision 7B-904(d1)(3) authorizes the trial court to order that a

 parent ‘[t]ake appropriate steps to remedy conditions in the home that led to or

 contributed to the juvenile’s adjudication or to the court’s decision to remove custody

 of the juvenile from the parent, guardian, custodian, or caretaker.’ ” (alteration in

 original) (quoting N.C.G.S. § 7B-904(d1)(3) (2015))). Moreover, respondent-father’s

 failure to complete the services prescribed by his case plan is probative of his lack of

 reasonable progress. See In re D.L.W., 368 N.C. at 844, 788 S.E.2d at 168 (holding

 “the Court of Appeals incorrectly concluded that respondent’s failure to comply with

 these [case plan] requirements could not justify the termination of her parental

 rights” pursuant to N.C.G.S. § 7B-1111(a)(2)).

¶ 21 Respondent-father’s observation that he and the children’s mother “were no

 longer together” at the time of the termination hearing is undoubtedly true, given the

 mother’s death in 2017. However, the death of the children’s mother did not absolve

 respondent-father of obtaining the treatment prescribed by his case plan to address

 his domestic violence history. See generally In re J.S., 374 N.C. at 815–16, 845 S.E.2d

 at 71 (requiring only “a nexus between the components of the court-approved case

 plan with which the respondent failed to comply and the conditions which led to the
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 child’s removal from the parental home” in order for noncompliance to support

 termination under N.C.G.S. § 7B-1111(a)(2) (cleaned up) (quoting In re B.O.A., 372

 N.C. 372, 385, 831 S.E.2d 305, 314 (2019))). Nor was respondent-father relieved of

 complying with his case plan by the fact that DSS offered no evidence of additional

 acts of domestic violence between respondent-father and his current girlfriend. See

 id.

¶ 22 The trial court also found respondent-father had “made no progress” to “obtain

 housing appropriate for himself and the children” as required by his case plan. The

 evidence showed respondent-father and his girlfriend had resided since 2018 in a 350-

 square-foot structure without bedrooms or plumbing—which DSS and the trial court

 had found to be inadequate.

¶ 23 As for stable employment, the trial court found respondent-father reported

 having full-time employment with a construction company since mid-November 2019,

 a period of less than two months at the time of the hearing. Respondent-father

 characterized his previous employment as “fairly steady” and involving “home

 improvements and side jobs.” However, he acknowledged having been convicted of

 possession of a stolen firearm in March 2019, which resulted in the revocation of his

 probation for his 2017 conviction for assault on a female and five months of

 incarceration from March to July 2019. In addition, the trial court found he “has not

 obtained and maintained the necessary employment as required by the DSS case
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 plan” because respondent-father admitted to lacking stable employment before DSS

 filed the petitions to terminate his parental rights and provided no documentation of

 his employment or income.

¶ 24 Respondent-father suggests his failure to maintain stable employment “was an

 important factor only if his lack of employment flowed from or led to his substance

 abuse.” To the contrary, as explained in his case plan, stable employment was

 important in order to allow respondent-father “to be able to support himself and the

 children.”

¶ 25 Regarding the substance abuse component of his case plan, the trial court

 found respondent-father obtained a CCA on August 12, 2019, but did so

 “unbeknownst to DSS” and “after DSS was relieved” of reunification efforts. Although

 the DSS social worker received a copy of the CCA at the termination hearing,4 she

 testified she had not previously seen the document, and respondent-father had

 provided no documentation indicating his compliance with the CCA’s

 recommendations as required by his case plan. Respondent-father did not claim to

 have complied with the CCA’s recommendations during his testimony at the

 termination hearing.

¶ 26 The trial court found respondent-father tested positive for marijuana at a drug

 4 The CCA was not admitted into evidence at the termination hearing, and no witness

 described its contents.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 screen performed on a court date in October 2018 and refused additional drug screens

 requested by DSS in October and November 2018, after which the trial court relieved

 DSS of reunification efforts. The trial court also found respondent-father refused a

 drug screen requested by DSS in December 2018, advising the social worker that “he

 did not have the financial means to comply.”

¶ 27 Respondent-father does not contest these findings and in fact “stipulate[s] that

 he tested positive for marijuana when tested twice in court and admitted he would

 have tested positive a third time.”5 He instead implies that his continued drug use

 while the children were in DSS custody is insignificant because “he was not caring

 for the children at the time.” Respondent-father likewise downplays his refusal to

 submit to DSS’s drug screens, citing the fact that he was on criminal probation

 throughout the course of the juvenile proceedings and submitting to drug screens was

 a requirement of his probation. Respondent-father contends DSS presented no

 evidence contradicting his testimony “that his drug test results with probation were

 negative as supported by the fact that he was not violated for using drugs while on

 probation.”

¶ 28 We offer no comment concerning the relevance of respondent-father’s success

 in satisfying the requirements of his probation as proof of his progress in addressing

 5 During his testimony at the termination hearing, respondent-father admitted he

 attended previous court hearings while drunk.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 the issue of substance abuse while simultaneously stipulating to using marijuana and

 to submitting to multiple positive drug screens during the same period. The trial

 court could reasonably construe respondent-father’s positive drug screens and refusal

 of requested screens as noncompliance with this component of his case plan.

 Moreover, it appears respondent-father never submitted the negative drug screens

 required to be allowed visitation with the children as provided in the initial

 adjudication and disposition order.

¶ 29 As for the parenting skills portion of his case plan, respondent-father appears

 to take issue with the trial court’s finding that he “testified he has participated in

 Triple P Parenting [classes] although he has provided no documentation regarding

 the same.” One DSS social worker acknowledged having “been given a copy of a

 certificate for a Triple P online parenting course with today’s date” on the day of the

 hearing, indicating respondent-father’s completion of the course. However, the

 transcript does not reflect that either DSS or respondent-father tendered this

 document to the trial court as evidence. We assume arguendo that, consistent with

 the testimony from the termination hearing, respondent-father had not completed

 any parenting classes at the time DSS filed its TPR petitions in November 2019 but

 had recently completed an online parenting course at the time of the termination

 hearing. Accordingly, we disregard the trial court’s finding to the contrary for

 purposes of our review. See In re S.D., 374 N.C. 67, 83, 839 S.E.2d 315, 328 (2020).
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

¶ 30 The trial court found that “[t]he failure of the respondent father to comply with

 the DSS case plan[ ] and eliminate the reasons the [children] came into DSS custody

 demonstrates his failure to make reasonable progress to correct the conditions

 leading to the removal of the [children] from his home.” We have held that “parental

 compliance with a judicially adopted case plan is relevant in determining whether

 grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(2)” provided that

 “the objectives sought to be achieved by the case plan provision in question address

 issues that contributed to causing the problematic circumstances that led to the

 juvenile’s removal from the parental home.” In re B.O.A., 372 N.C. at 384, 831 S.E.2d

 at 313–14.

¶ 31 Here, respondent-father’s failure to meaningfully engage with the case plan

 objectives related to substance abuse, domestic violence, and suitable housing,

 despite being given more than twenty-seven months to do so, supports the trial court’s

 conclusion that he willfully failed to make reasonable progress under N.C.G.S. § 7B-

 1111(a)(2). Respondent-father’s claim that he had “addressed the areas of concern

 listed in his case plan, even if the trial court did not approve of the exact manner or

 timeliness with which he did so” is not borne out by the record or by the trial court’s

 uncontested findings.

¶ 32 Although the record shows respondent-father made some last-minute attempts

 to comply with the case plan by the time of the termination hearing—including
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

completing a CCA, completing an online parenting course, obtaining full-time

employment, and reenrolling in domestic violence treatment—he still had not

completed domestic violence treatment or addressed his substance abuse issues, and

he remained in housing unsuitable for the children. Respondent-father’s partial

steps—undertaken after DSS had filed petitions to terminate his parental rights and

two years or more after the children’s removal from the home—are insufficient to

constitute reasonable progress under N.C.G.S. § 7B-1111(a)(2).6 See e.g., In re I.G.C.,

373 N.C. 201, 206, 835 S.E.2d 432, 435 (2019) (affirming adjudication under N.C.G.S.

§ 7B-1111(a)(2) when the “respondent-mother waited too long to begin working on

her case plan and that, as a result, she had not made reasonable progress toward

correcting the conditions that led to the children’s removal by the time of the

termination hearing”).

 6 Respondent-father asserts he “was not required to have fully complied with his case

plan by the time of the termination hearing” in order to meet the “reasonable progress”
standard in N.C.G.S. § 7B-1111(a)(2). As a statement of general principle, this is true. See In
re B.O.A., 372 N.C. at 385, 831 S.E.2d at 314 (cautioning that “a trial judge should refrain
from finding that a parent has failed to make reasonable progress in correcting those
conditions which led to the removal of the juvenile simply because of his or her failure to fully
satisfy all elements of the case plan goals” (cleaned up) (quoting In re J.S.L., 177 N.C. App.
151, 163, 628 S.E.2d 387, 394 (2006))). However, the parent’s progress must be “reasonable”
under the circumstances, including the amount of time the parent has enjoyed to correct the
conditions at issue. See In re J.S., 374 N.C. at 815, 845 S.E.2d at 71 (2020) (“A respondent’s
prolonged inability to improve [his or] her situation, despite some efforts in that direction,
will support a finding of willfulness regardless of [his or] her good intentions, and will support
a finding of lack of progress sufficient to warrant termination of parental rights . . . .” (cleaned
up) (quoting In re J.W., 173 N.C. App. 450, 465–66, 619 S.E.2d 534, 545 (2005))).
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 B. The poverty exception in N.C.G.S. § 7B-1111(a)(2)

¶ 33 Respondent-father also challenges the trial court’s adjudication on the ground

 that the court “failed to consider whether poverty was a factor in his inability to

 complete his case plan.” He bases his argument on the qualifying language that

 appears at the conclusion of N.C.G.S. § 7B-1111(a)(2): “No parental rights, however,

 shall be terminated for the sole reason that the parents are unable to care for the

 juvenile on account of their poverty.” N.C.G.S. § 7B-1111(a)(2) (2019).

¶ 34 However, respondent-father did not file an answer to the TPR petitions, and

 so he did not assert poverty or any other potential defense to the grounds for

 termination alleged under N.C.G.S. § 7B-1111(a)(2). See generally N.C.G.S. § 7B-1107

 (2019) (authorizing the trial court upon a parent’s failure to file a responsive pleading

 to “issue an order terminating all parental and custodial rights of that parent with

 respect to the juvenile; provided the court shall order a hearing . . . on [the facts

 alleged in] the petition or motion”). Nor did respondent-father raise the issue of

 poverty to the trial court during the termination hearing as a potential basis to avoid

 termination of his parental rights.

¶ 35 “Failure to raise an affirmative defense in the pleadings generally results in a

 waiver thereof.” Robinson v. Powell, 348 N.C. 562, 566, 500 S.E.2d 714, 717 (1998);

 see also N.C.G.S. § 1A-1, Rule 8(c) (2019). However, we have not previously classified

 a parent’s poverty as an affirmative defense and decline to do so here.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

¶ 36 The precise nature of respondent-father’s argument is unclear. A portion of his

 brief may be fairly read as asserting that an adjudication under N.C.G.S. § 7B-

 1111(a)(2) requires a finding by the trial court to the effect that poverty is not the

 cause of the parent’s failure to correct the conditions which led to the children’s

 removal. In fact, respondent-father “challenges the trial court’s failure to make a

 required statutory finding.” In support of this argument, respondent-father quotes

 the poverty exception in N.C.G.S. § 7B-1111(a)(2) and asserts that “[t]he trial court’s

 failure to address this factor at all requires this Court to reverse the termination

 order[s].” Elsewhere, however, respondent-father appears to contend the trial court

 failed to make findings evincing that it considered the evidence in light of the

 statutory language barring termination of parental rights under N.C.G.S. § 7B-

 1111(a)(2) based solely on the parent’s inability to care for the children on account of

 the parent’s poverty .

¶ 37 To the extent respondent-father argues that N.C.G.S. § 7B-1111(a)(2) requires

 an affirmative finding by the trial court that poverty is not the sole reason of a

 parent’s inability to care for a child as an element or “factor” of the adjudication, we

 find no merit to his argument.

¶ 38 Subsection (a)(2) begins by defining one of the eleven grounds authorized by

 N.C.G.S. § 7B-1111 for terminating parental rights:

 The parent has willfully left the juvenile in foster care or
 placement outside the home for more than 12 months
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 without showing to the satisfaction of the court that
 reasonable progress under the circumstances has been
 made in correcting those conditions which led to the
 removal of the juvenile.

 N.C.G.S. § 7B-1111(a)(2). It concludes with the following qualifier: “No parental

 rights, however, shall be terminated for the sole reason that the parents are unable

 to care for the juvenile on account of their poverty.” Id.

¶ 39 The poverty exception in N.C.G.S. § 7B-1111(a)(2) does not define the

 “elements” of this statutory ground for terminating parental rights. The exception

 instead establishes what is not a willful failure to make reasonable progress under

 the circumstances for purposes of N.C.G.S. § 7B-1111(a)(2). Therefore, to the extent

 respondent-father “challenges the trial court’s failure to make a required statutory

 finding” about poverty or its effect on his ability to care for the children, his argument

 is overruled.

¶ 40 To the extent respondent-father instead complains that the trial court’s

 findings fail to reflect its consideration of the poverty exception in N.C.G.S. § 7B-

 1111(a)(2), we conclude his argument is without merit.

¶ 41 Because the statutory poverty exception does not create an affirmative element

 or factor required to support an adjudication under N.C.G.S. § 7B-1111(a)(2), the trial

 court has no obligation to make specific findings on the issue in the absence of

 evidence tending to show that poverty is the sole reason for a parent’s inability to

 care for the child.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

¶ 42 A review of the transcript from the termination hearing shows respondent-

 father did not claim and the trial court heard no evidence that poverty was the “sole

 reason” respondent-father failed to correct the conditions which led to the children’s

 removal from the home. N.C.G.S. § 7B-1111(a)(2). Respondent-father did not purport

 to provide an accounting of his income and expenses during the period between

 September 2017 and January 20207, nor did he testify he was financially unable to

 care for his children or comply with his case plan. His counsel likewise made no

 mention of poverty in his motion to dismiss at the conclusion of the evidence or in his

 closing argument to the trial court.

¶ 43 Respondent-father contends the trial court should have considered whether

 poverty was “a factor” or “an issue that affected [his] ability to remedy the conditions

 causing the children’s removal” or “may have interfered with [his] ability to” do so.

 None of these formulations are consistent with the statutory standard. We conclude

 the trial court’s findings accurately reflect the evidence of respondent-father’s

 circumstances and fully support the trial court’s determination that his lack of

 progress was willful. Compare In re N.K., 375 N.C. 805, 816, 851 S.E.2d 321, 330

 (2020) (“Although the record contains evidence tending to show that respondent-

 mother had experienced financial difficulties, a careful analysis of the record shows

 7 Respondent-father stated he was currently earning $400 to $450 per week at the job

 he had obtained in mid-November 2019. He described his previous employment as “fairly
 steady” but did not provide specific information about his earnings.
 IN RE T.M.L. AND A.R.L.

 2021-NCSC-55

 Opinion of the Court

 that respondent-mother’s inability to care for [the child] did not stem solely from her

 poverty.”), with In re S.D., 243 N.C. App. 65, 73, 776 S.E.2d 862, 867 (2015) (“The

 only other factor which could support the trial court’s conclusion [that respondent

 failed to make reasonable progress] was respondent’s meager income, but again,

 poverty alone cannot be a basis for termination of parental rights.”).

 III. Conclusion

¶ 44 The trial court’s findings of fact support its conclusion that grounds exist for

 the termination of respondent-father’s parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(2). Respondent-father does not contest the trial court’s conclusion under

 N.C.G.S. § 7B-1110(a) that termination of his parental rights was in the children’s

 best interests. See N.C.G.S. § 7B-1110(a) (2019). Accordingly, we affirm the trial

 court’s orders.

 AFFIRMED.